UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRINLEY HOLDINGS INC., and
FREESTREAM AIRCRAFT (BERMUDA) LTD.,

Plaintiffs,

v.

RSH AVIATION, INC. and JOHN T. DUSEK III,

Defendants.

No.

## COMPLAINT

Plaintiffs Brinley Holdings Inc. ("Brinley") and Freestream Aircraft (Bermuda) Ltd. ("Freestream"), with knowledge of their own acts and acts taking place in their presence, and upon information and belief as to all other matters, by their undersigned counsel, Ellis Legal P.C. and Boies Schiller Flexner LLP, for their Complaint against Defendant RSH Aviation, Inc. ("RSH") and its principal, Defendant John T. Dusek III ("Dusek"), allege as follows:

## SUMMARY OF ACTION

1. These claims arise from a fraudulent scheme orchestrated by Defendant RSH and its principal, Defendant Dusek, to tortiously interfere with Plaintiffs' contracts and prospective economic advantage regarding Brinley's rights to purchase and resell an Airbus A319 aircraft bearing serial number 4228 (the "Aircraft").

2. In furtherance of this tortious scheme, Defendants caused the failure of Brinley's agreements with the seller and end purchaser by falsely representing to the seller and the seller's corporate parent that (i) Brinley's end-purchaser had reneged and was no longer willing to purchase the Aircraft, (ii) as a result, Brinley was reneging on its agreement to purchase the

Aircraft, and (iii) Defendants could arrange a sale with a new purchaser. In fact, Defendants were in contact with the same end purchaser, and they convinced the seller to arrange a sale of the Aircraft to *the same end purchaser*, just for a lower price.

3. After Defendants' interference caused the failure of Plaintiffs' initially planned transactions, Plaintiffs negotiated and executed new agreements with the seller and end purchaser. Again, Defendants interfered causing the termination of all of Plaintiffs' new transactions.

4. As a result of Defendants' fraudulent and malicious conduct, Plaintiffs' planned purchase and resale of the Aircraft was disrupted and prevented from coming to fruition—not once, but *twice*—causing Plaintiffs millions of dollars in damages.

## THE PARTIES

5. Plaintiff Brinley is a corporation formed under the laws of Panama, with its principal place of business in Panama City, Panama.

6. Plaintiff Freestream is a corporation formed under the laws of Bermuda, with its principal place of business in Hamilton, Bermuda.

7. Defendant RSH is a domestic corporation formed under the laws of the State of Illinois, with a registered address at 460 Raintree Court, #3M, Glen Ellyn, Illinois 60137, and its principal place of business in Chicago, Illinois.

8. Defendant Dusek is the President and principal of RSH. He resides and is domiciled in Glen Ellyn, Illinois.

9. Non-party Yunhua Corporate Jet Leasing Designated Activity Company ("Yunhua" or "seller") is a corporation formed under the laws of Ireland, with a registered address in Dublin, Ireland. Yunhua was the planned seller of the Aircraft.

10. Non-party ICBC Financial Leasing Co., Ltd. ("ICBC") is an entity formed under the laws of China, with a principal place of business in Beijing, China. ICBC is the corporate parent of Yunhua, the planned seller of the Aircraft.

11. Non-party Alti Management Ltd. ("Alti") is an entity organized under the laws of the British Virgin Islands, with a registered address at OMC Chambers, Wickhams Cay 1, Road Town, Tortola, British Virgin Islands. Alti was the planned end purchaser of the Aircraft.

12. Non-party Bolti Management Ltd. ("Bolti") is an entity organized under the laws of the British Virgin Islands, with a registered address at OMC Chambers, Wickhams Cay 1, Road Town, Tortola, British Virgin Islands. Bolti is a corporate affiliate of Alti, the planned end purchaser of the Aircraft.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000 exclusive of interests and costs.

14. This Court has jurisdiction over Defendant RSH pursuant to 735 Ill. Comp. Stat. Ann. 5/2-209(b)(3) because RSH is a corporation organized under the laws of Illinois.

15. This Court has jurisdiction over Defendant Dusek pursuant to 735 Ill. Comp. Stat. Ann. 5/2-209(b)(3) because Dusek is a natural person domiciled within Illinois, and he was so when the causes of action arose, when this action was commenced, and when process was served.

16. This Court also has jurisdiction over Defendants pursuant to 735 Ill. Comp. Stat. Ann. 5/2-209(b)(4) because Defendants do business within Illinois.

17. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because Defendants RSH and Dusek reside within this district, and all Defendants are residents of the State of Illinois. Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTUAL BACKGROUND

### Initial Planned Transactions

18. On or about May 9, 2018, Yunhua and Brinley executed a binding letter of intent (the "Initial Yunhua-Brinley LOI"), pursuant to which Yunhua agreed to sell the Aircraft to Brinley.

19. Also on or about May 9, 2018, Brinley and Bolti executed a binding letter of intent (the "Initial Brinley-Bolti LOI"), pursuant to which Brinley agreed to sell the Aircraft to Bolti, or Bolti's designee or assignee.

20. Upon execution of the Initial Yunhua-Brinley LOI, Yunhua and Brinley negotiated a formal Aircraft Purchase Agreement ("APA") (the "Initial Yunhua-Brinley APA" and, with the Initial Yunhua-Brinley LOI, the "Initial Yunhua Agreements"). On July 4, 2018, Yunhua executed and delivered the Initial Yunhua-Brinley APA to Brinley.

21. Upon execution of the Initial Brinley-Bolti LOI, Brinley also negotiated a formal APA with Bolti, which designated its affiliate, Alti, as the ultimate purchaser of the Aircraft (the "Initial Brinley-Alti APA" and, with the Initial Brinley-Bolti LOI, the "Initial Bolti Agreements").

22. Under the terms of the Initial Yunhua-Brinley APA and the Initial Brinley-Alti APA: (i) Yunhua would sell the Aircraft to Brinley for a purchase price of $50,000,000; and (ii) Brinley would sell the Aircraft to Alti for a purchase price of $57,000,000.

23. Additionally, in a separate binding agreement, Brinley agreed to pay $3,000,000 of its $7,000,000 profit to Freestream in consideration of brokerage services Freestream rendered (the "Initial Freestream Brokerage Agreement").

**Defendants' First Round of Interference**

24. In or around July 2018, Defendants engaged in a series of communications with Bolti and Alti for the sole purpose of frustrating and interfering with Plaintiffs' Initial Bolti Agreements. Defendants told Bolti and/or Alti, among other things, that:

    (a) Bolti and Alti should terminate their agreements with Brinley and should stop dealing with Brinley and Freestream altogether; and

    (b) Defendants could arrange an alternative transaction wherein Bolti and/or Alti could purchase the Aircraft at a lower price.

25. Additionally, also in or around July 2018, Defendants offered to pay certain Alti employees, including an aviation manager for Alti based in Burkina Faso, if those employees would intervene to convince Bolti and/or Alti to terminate the Initial Bolti Agreements with Plaintiffs and to push Alti into a new deal with Defendants.

26. Simultaneously therewith, in or around July 2018, Defendants engaged in a series of communications with Yunhua and ICBC, wherein Defendants made numerous misleading representations to Yunhua and ICBC, including that:

    (a) Plaintiffs' end purchasers had reneged and were no longer willing to purchase the Aircraft;

(b) As a result, Brinley would be forced to renege and not close on the Initial Yunhua Agreements; and

(c) Defendants could salvage Yunhua's sale of the Aircraft by arranging for the Aircraft to be sold to a new purchaser, but at a much lower sales price.

27. At all relevant times, when Defendants made the above-referenced representations to Yunhua and ICBC, Defendants failed to disclose numerous material facts to Yunhua and ICBC, including that:

(a) Defendants acted deliberately to frustrate and interfere with Plaintiffs' Initial Bolti Agreements and to cause Bolti and Alti to renege on those agreements;

(b) Defendants never arranged an alternative transaction involving a different end purchaser; and

(c) In fact, the only alternative transaction Defendants arranged was a transaction involving *the same end purchasers*, Bolti and/or Alti, just for a lower purchase price; therefore

(d) All Defendants had actually done was intentionally cause Yunhua and ICBC to sell the Aircraft to the exact same end purchaser at a multi-million-dollar loss compared to its Initial Yunhua Agreements.

28. Defendants made the above-referenced misrepresentations and omissions knowing they were false or misleading and for the sole purpose of interfering with Plaintiffs' contracts and prospective economic advantage.

29. As a result of these and other acts of interference by Defendants, Bolti and its designee, Alti, were induced to terminate the Initial Bolti Agreements and their purchase commitment to Brinley.

30. As a result of these and other acts of interference by Defendants, Yunhua was induced to terminate the Initial Yunhua Agreements and their sales commitment to Brinley.

31. Also as a result of these and other acts of interference by Defendants, Brinley was induced to terminate the Initial Freestream Brokerage Agreement.

32. On July 28, 2018, counsel for Brinley sent a cease-and-desist letter to Defendants, demanding that Defendants immediately cease interfering with Plaintiffs' contracts and prospective economic advantage, and advising that Brinley had exclusive rights to purchase the Aircraft.

### Defendants' Second Round of Interference

33. Defendants' proposed alternative transaction never came to fruition.

34. Subsequently, Yunhua, Brinley, Freestream, Bolti and Alti negotiated a new series of agreements (the "New APAs"):

    (a) On August 23, 2018, Yunhua and Brinley executed and delivered a new APA whereby Yunhua would sell the Aircraft to Brinley for a purchase price of $46,000,000 (the "New Yunhua-Brinley APA").

    (b) In August 2018, Brinley and Alti also negotiated a new APA whereby Brinley would sell the Aircraft to Alti for a purchase price of $48,000,000 (the "New Brinley-Alti APA").

35. Additionally, in a separate agreement, Brinley agreed to pay $666,666.66 of its now significantly reduced $2,000,000 profit to Freestream in consideration of brokerage services Freestream rendered (the "New Freestream Brokerage Agreement" and, together with the Initial Freestream Brokerage Agreement, the "Freestream Brokerage Agreements").

36. In or around August 2018, Defendants again intervened to frustrate Plaintiffs' agreements. This time, Defendants communicated with Bolti, Alti, and/or agents thereof, and claimed they could arrange a different transaction wherein Bolti or Alti could purchase the Aircraft for $46,000,000—$2,000,000 less than what Alti had agreed to pay in the New Brinley-Alti APA.

37. Defendants made the above-referenced representation—knowing that Alti had already entered into the New Brinley-Alti APA—for the sole purpose of interfering with Plaintiffs' contracts and prospective economic advantage and causing Alti to renege.

38. As a result of Defendants' actions, Alti reneged on its agreement to purchase the Aircraft.

39. Defendants once again went back to Yunhua and told it that they had the only buyer ready, willing and able to purchase the Aircraft, but now at an even lower price.

40. Plaintiffs have lost several million dollars as a result of Defendants' intentional interference with Plaintiffs' contracts and prospective economic advantage.

## FIRST CAUSE OF ACTION
### Intentional Interference with Contract
**(By All Plaintiffs Against All Defendants)**

41. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 40 above as if fully set forth herein.

42. Brinley had valid and enforceable contracts with Yunhua, including the Initial Yunhua Agreements and the New Yunhua-Brinley APA, which granted Brinley the right to purchase the Aircraft.

8

43. Brinley had valid and enforceable contracts with Bolti and Alti, including the Initial Bolti Agreements and the New Brinley-Alti APA, with respect to Brinley's resale of the Aircraft.

44. Freestream was a third-party beneficiary of the Initial Yunhua Agreements, the Initial Bolti Agreements, and the New APAs.

45. Plaintiffs performed the obligations to be performed with respect to the Initial Yunhua Agreements, the Initial Bolti Agreements, and the New APAs.

46. Through their communications with Yunhua, Bolti, Alti, and multiple affiliates and agents thereof, Defendants knew, and demonstrated their knowledge of, the agreements between Brinley and Yunhua, between Brinley and Bolti and Alti, and between Brinley and Freestream.

47. Defendants intended to prevent Yunhua's, Bolti's, and Alti's performance under the Initial Yunhua Agreements, the Initial Bolti Agreements, and the New APAs and knew that prevention of Yunhua's, Bolti's, and Alti's performance was certain or substantially certain to occur as a result of their acts or conduct as described herein.

48. Each of Defendants RSH and Dusek intentionally interfered with Brinley's agreements with Yunhua and with Bolti and Alti—including the Initial Yunhua Agreements, the Initial Bolti Agreements, and the New APAs—by making fraudulent misrepresentations and omissions to Yunhua and ICBC and attempting to divert business from Plaintiffs to themselves.

49. Defendants' conduct was undertaken deliberately to induce, and did in fact induce, Yunhua, Bolti and Alti to terminate their agreements with Plaintiffs. If not for Defendants' conduct, Plaintiffs would have consummated the foregoing agreements.

50. Defendants' conduct was not justified because it was undertaken via unlawful means and/or with actual malice and/or with a desire to cause harm to Plaintiffs unrelated to any purported interest Defendants sought to protect through their interference.

51. Defendants' conduct was gross, wanton, deliberate, and demonstrated a high degree of moral culpability, and/or Defendants acted with malice, insult, and/or willful or reckless disregard of Plaintiffs' rights.

52. As a proximate result of Defendants' conduct, Plaintiffs have sustained damages in an amount to be proved at trial and are entitled to recover, *inter alia*:

   (a) All amounts which were reasonably expected to flow from Brinley's purchase and resale of the Aircraft, including from the Initial Yunhua Agreements and the Initial Bolti Agreements, or from the New APAs; and/or

   (b) All costs associated with negotiating and drafting the contracts and related documentation, performing thereunder and enforcement expenses.

## SECOND CAUSE OF ACTION
### Intentional Interference with Contract
### (By Freestream Against All Defendants)

53. Freestream realleges and thereby incorporates by reference each and every allegation set forth in paragraphs 1 through 40 above as if fully set forth herein.

54. Freestream had valid and enforceable contracts with Brinley, including the Freestream Brokerage Agreements.

55. Freestream performed the obligations to be performed with respect to the Freestream Brokerage Agreements.

56. Through their communications with Yunhua, Bolti, Alti, and multiple affiliates and agents thereof, Defendants knew, and demonstrated their knowledge of, the Freestream Brokerage Agreements between Brinley and Freestream.

57. Defendants intended to prevent Brinley's performance under the Freestream Brokerage Agreements and knew that prevention of Brinley's performance was certain or substantially certain to occur as a result of their acts or conduct as described herein.

58. Each of Defendants RSH and Dusek intentionally interfered with the Freestream Brokerage Agreements by making misleading representations and omissions to Yunhua and ICBC and attempting to divert business from Plaintiffs to themselves.

59. Defendants' conduct was undertaken deliberately to induce, and did in fact induce Brinley to fail to perform its obligations under the Freestream Brokerage Agreements. If not for Defendants' conduct, Brinley would have consummated and performed under the Freestream Brokerage Agreements, including by paying Freestream the agreed-upon fees as compensation for brokerage services Freestream rendered.

60. Defendants' conduct was not justified because it was undertaken via unlawful means and/or with actual malice and/or with a desire to cause harm to Freestream unrelated to any purported interest Defendants sought to protect through their interference.

61. Defendants' conduct was gross, wanton, deliberate, and demonstrated a high degree of moral culpability, and/or Defendants acted with malice, insult, and/or willful or reckless disregard of Plaintiffs' rights.

62. As a proximate result of Defendants' conduct, Freestream has sustained damages in an amount to be proved at trial and is entitled to recover, *inter alia*:

> (a) All amounts which were reasonably expected to flow from the Freestream Brokerage Agreements; and/or
>
> (b) All costs associated with negotiating and drafting the Freestream Brokerage Agreements and related documentation and performing thereunder.

## THIRD CAUSE OF ACTION
### Intentional Interference with Prospective Economic Advantage
(By All Plaintiffs Against All Defendants – Alternative to First Cause of Action)

63. Plaintiffs reallege and thereby incorporate by reference each and every allegation set forth in paragraphs 1 through 40 above as if fully set forth herein.

64. Brinley had an opportunity and reasonably expected to enter into multiple transactions with Yunhua wherein Yunhua would sell the Aircraft to Brinley. Plaintiffs had an existing business relationship and a prospective business relationship with Yunhua and ICBC as evidenced, in part, by the Initial Yunhua Agreements and the New Yunhua-Brinley APA.

65. Brinley also had an opportunity and reasonably expected to enter into multiple transactions with Bolti and Alti wherein Bolti and/or Alti would purchase the Aircraft from Brinley. Plaintiffs had an existing business relationship and a prospective business relationship with Bolti and Alti, as evidenced, in part, by the Initial Bolti Agreements and the New Brinley-Alti APA.

66. Through their communications with Yunhua, Bolti, Alti, and multiple affiliates and agents thereof, Defendants were aware of Plaintiffs' existing and prospective business relationships with Yunhua, Bolti and Alti and their reasonable expectation of obtaining an economic advantage from same.

67. Each of Defendants RSH and Dusek purposefully interfered with Plaintiffs' business relationships and prospective business relationships with Yunhua, Bolti and Alti, including by inducing Yunhua, Bolti and Alti to terminate and/or renege on the Initial Yunhua Agreements, the Initial Bolti Agreements, and the New APAs through wrongful and fraudulent conduct specifically directed at Yunhua, Bolti and Alti.

68. Specifically, among other things, each of Defendants RSH and Dusek told Bolti and/or Alti that:

12

    (a) Bolti and Alti should terminate their agreements with Brinley and should stop dealing with Brinley and Freestream altogether; and

    (b) Defendants could arrange an alternative transaction wherein Bolti and/or Alti could purchase the Aircraft at a lower price.

69. Defendants also offered to pay certain Alti employees if those employees would intervene to convince Alti and/or Bolti to terminate the Initial Bolti Agreements and the New Alti APA with Plaintiffs and to push Alti into deals with Defendants.

70. Additionally, among other things, in or around July 2018, each of Defendants RSH and Dusek made misleading representations to Yunhua and ICBC that:

    (a) Plaintiffs' end purchasers had reneged and were no longer willing to purchase the Aircraft;

    (b) As a result, Brinley would be forced to renege and not close on the Initial Yunhua Agreements; and

    (c) Defendants could salvage Yunhua's sale of the Aircraft by arranging for the Aircraft to be sold to a new purchaser, but at a much lower sales price.

71. Further, among other things, in or around July 2018, each of Defendants RSH and Dusek fraudulently failed to disclose to Yunhua and ICBC that:

    (a) Defendants acted deliberately to frustrate and interfere with Plaintiffs' Initial Bolti Agreements and to cause Bolti and Alti to renege on those agreements;

    (b) Defendants never arranged an alternative transaction involving a different end purchaser; and

(c) In fact, the only alternative transaction Defendants arranged was a transaction involving *the same end purchasers*, Bolti and/or Alti, just for a lower purchase price; therefore

(d) All Defendants had actually done was intentionally cause Yunhua and ICBC to sell the Aircraft to the exact same end purchaser at a multi-million-dollar loss compared to its Initial Yunhua Agreements.

72. In or about August 2018, each of Defendants RSH and Dusek made similar misrepresentations and omissions to cause Yunhua, Bolti and Alti to fail to perform under the New APAs.

73. Defendants' conduct was undertaken deliberately to interfere, and did in fact interfere, with Brinley's business relationships with Yunhua, Bolti and Alti, and Plaintiffs' business relationships with all other persons or entities from whom Plaintiffs reasonably expected to obtain an economic advantage as a result of same.

74. There was a reasonable certainty that, but for Defendants' conduct, Plaintiffs would have obtained an economic advantage from their business dealings with Yunhua, Bolti and Alti. Additionally, Defendants' conduct disparaged and adversely affected Plaintiffs' business standing, general reputation, and goodwill.

75. Defendants' conduct was not justified because it was undertaken via unlawful means and/or with actual malice and/or with a desire to cause harm to Plaintiffs unrelated to any purported interest Defendants sought to protect through their interference.

76. Defendants' conduct was gross, wanton, deliberate, and demonstrated a high degree of moral culpability, and/or Defendants acted with malice, insult, and/or willful or reckless disregard of Plaintiffs' rights.

77. As a proximate result of Defendants' conduct, Plaintiffs have sustained damages in an amount to be proved at trial and are entitled to recover, *inter alia*:

> (a) All amounts which were reasonably expected to flow from Brinley's existing and prospective business relationships and arrangements with Yunhua, Bolti and Alti; and/or
>
> (b) All costs associated with negotiating and drafting the agreements with Yunhua, Bolti and Alti and related documentation, performing thereunder and enforcement expenses.

**FOURTH CAUSE OF ACTION**
**Intentional Interference with Prospective Economic Advantage**
**(By Freestream Against All Defendants – Alternative to Second Cause of Action)**

78. Freestream realleges and thereby incorporates by reference each and every allegation set forth in paragraphs 1 through 40 above as if fully set forth herein.

79. Freestream had an opportunity and reasonably expected to enter into multiple transactions with Brinley wherein Brinley would compensate Freestream for brokerage services Freestream rendered in arranging Brinley's purchase and resale of the Aircraft. Freestream had an existing business relationship and a prospective business relationship with Brinley as evidenced, in part, by the Freestream Brokerage Agreements.

80. Freestream also had an existing business relationship and a prospective business relationship with Yunhua, ICBC, Bolti and Alti to provide aircraft brokerage and related services.

81. Through their communications with Yunhua, ICBC, Bolti, Alti, and multiple affiliates and agents thereof, Defendants were aware of Freestream's existing and prospective

15

business relationships with Brinley, Yunhua, ICBC, Bolti and Alti and its reasonable expectation to enter into transactions with the same.

82. Each of Defendants RSH and Dusek purposefully interfered with Freestream's existing and/or prospective business relationship with Brinley, including by inducing Brinley to fail to perform its obligations to Freestream through unlawful conduct specifically directed at Brinley.

83. Each of Defendants RSH and Dusek also purposefully interfered with Freestream's existing and/or prospective business relationship with Yunhua, ICBC, Bolti and Alti, including inducing them to terminate business relations and contacts with Freestream through unlawful conduct specifically directed at Yunhua, ICBC, Bolti and Alti.

84. Each of Defendants RSH and Dusek made numerous misrepresentations and omissions in their communications with Yunhua, Bolti and Alti in an attempt to induce Yunhua, Bolti, and Alti to terminate their agreements with Brinley (including the Initial Yunhua Agreements, the Initial Bolti Agreements, and the New APAs), and thereby cause Brinley to terminate and/or fail to perform under its agreements with Freestream.

85. Specifically, among other things, each of Defendants RSH and Dusek told Bolti and/or Alti that:

       (a) Bolti and Alti should terminate their agreements with Brinley and should stop dealing with Brinley and Freestream altogether; and

       (b) Defendants could arrange an alternative transaction wherein Bolti and/or Alti could purchase the Aircraft at a lower price.

86. Defendants also offered to pay certain Alti employees if those employees would intervene to convince Alti to terminate the Initial Bolti Agreements and the New Alti APA with

Plaintiffs, to stop working with Freestream, and to push Alti into deals with or through the Defendants instead.

87. Additionally, among other things, in or around July 2018, each of Defendants RSH and Dusek made misleading representations to Yunhua and ICBC that:

    (a) Plaintiffs' end purchasers had reneged and were no longer willing to purchase the Aircraft;

    (b) As a result, Brinley would be forced to renege and not close on the Initial Yunhua Agreements; and

    (c) Defendants could salvage Yunhua's sale of the Aircraft by arranging for the Aircraft to be sold to a new purchaser, but at a much lower sales price.

88. Further, among other things, in or around July 2018, each of Defendants RSH and Dusek fraudulently failed to disclose to Yunhua and ICBC that:

    (a) Defendants acted deliberately to frustrate and interfere with Plaintiffs' Initial Bolti Agreements and to cause Bolti and Alti to renege on those agreements;

    (b) Defendants never arranged an alternative transaction involving a different end purchaser; and

    (c) In fact, the only alternative transaction Defendants arranged was a transaction involving *the same end purchasers*, Bolti and/or Alti, just for a lower purchase price; therefore

    (d) All Defendants had actually done was intentionally cause Yunhua and ICBC to sell the Aircraft to the exact same end purchaser at a multi-million-dollar loss compared to its Initial Yunhua Agreements.

89. In or about August 2018, each of Defendants RSH and Dusek made similar misrepresentations and omissions to cause Yunhua, Bolti and Alti to fail to perform under the New APAs and to cause Brinley to fail to perform under the New Freestream Brokerage Agreement.

90. Defendants' conduct was undertaken deliberately to interfere, and did in fact interfere, with Freestream's existing and prospective business relationships with Yunhua, ICBC, Brinley, Bolti and Alti.

91. There was a reasonable certainty that, but for Defendants' conduct, Freestream would have obtained an economic advantage from its business dealings with Yunhua, ICBC, Brinley, Bolti and Alti. Additionally, Defendants' conduct disparaged and adversely affected Freestream's business standing, general reputation, and goodwill.

92. Defendants' conduct was not justified because it was undertaken via unlawful means and/or with actual malice and/or a desire to cause harm to Freestream unrelated to any purported interest Defendants sought to protect through their interference.

93. Defendants' conduct was gross, wanton, deliberate, and demonstrated a high degree of moral culpability, and/or Defendants acted with malice, insult, and/or willful or reckless disregard of Plaintiffs' rights.

94. As a proximate result of Defendants' conduct, Freestream has sustained damages in an amount to be proved at trial and is entitled to recover, *inter alia*:

>   (a) All amounts which were reasonably expected to flow from Freestream's existing and prospective business relationships and arrangements with ICBC, Yunhua, Brinley, Bolti and Alti; and/or

(b) All costs associated with negotiating and drafting the agreements and related documentation and performing thereunder.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand the entry of a judgment:

1. On the first, second, third, and fourth causes of action, awarding money damages in an amount to be determined at trial;

2. On the first, second, third, and fourth causes of action, awarding punitive damages in an amount to be determined at trial;

3. Awarding Plaintiffs costs and attorneys' fees incurred in connection with this action; and

4. Granting such other and further relief as this Court may deem just and proper.

Dated: September 26, 2018
Chicago, Illinois

Respectfully submitted,

By: /s/ John Ellis

John Ellis
**ELLIS LEGAL P.C.**
200 West Madison Street, Suite 1940
Chicago, Illinois 60606
(312) 767-3256

Patrick J. Rohan (*pro hac vice forthcoming*)
Andrew P. Steinmetz (*pro hac vice forthcoming*)
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, New York 10504
(914) 749-8200

*Attorneys for Plaintiffs*