**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BRINLEY HOLDINGS INC., and FREESTREAM AIRCRAFT (BERMUDA) LTD., | |
| Plaintiffs, | Case No. 1:18-cv-06546 |
| v. | Hon. Sharon Johnson Coleman |
| RSH AVIATION, INC. and JOHN T. DUSEK III, | Hon. Sunil R. Harjani |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO CONSOLIDATE

Brinley Holdings Inc. ("Brinley") and Freestream Aircraft (Bermuda) Ltd. ("Freestream") (collectively, "Plaintiffs") seek to consolidate this action (the "First Action") with a related action, which was filed on August 2, 2019, entitled *Brinley Holdings Inc. et al. v. Husch Blackwell LLP et al.*, Case No. 19-cv-5242 (N.D. Ill. 2019) (the "Second Action"). The Second Action asserts claims against Husch Blackwell LLP ("Husch Blackwell") and Michael A. Cosby ("Cosby"), who served as counsel for Defendants in this First Action, RSH Aviation, Inc. ("RSH") and John T. Dusek, III ("Dusek") (together, the "Dusek Defendants"). Among other things, the complaint in the Second Action alleges that Husch Blackwell and Cosby aided and abetted the conduct that is the subject of this First Action: the Dusek Defendants' intentional interference with Plaintiffs' contracts and prospective economic advantages. Because the two actions concern a *concerted effort* by the Dusek Defendants, Husch Blackwell, and Cosby to interfere with the *same transactions*, Plaintiffs request that this Court consolidate the two actions. Plaintiffs have also separately moved to extend the dispositive motion deadline in this First Action until after this motion to consolidate has been resolved.

1

**FACTUAL BACKGROUND**

I.    **This First Action**

On September 26, 2018, Plaintiffs commenced this First Action against the Dusek Defendants. *See* ECF No. 1. On November 16, 2018, Plaintiffs filed the operative complaint against the Dusek Defendants. *See* ECF No. 23. In that complaint, Plaintiffs alleged that the Dusek Defendants intentionally interfered with Plaintiffs' contracts and prospective economic relationships concerning the purchase and sale of an Airbus ACJ319 Aircraft (the "Aircraft").

In particular, Plaintiffs alleged that, in July 2018, Plaintiffs entered into two Sale and Purchase Agreements ("SPAs"), which set up the essential structure of their transaction. First, Plaintiffs would purchase the Aircraft from Yunhua Corporate Jet Leasing Designated Activity Company[1] ("Yunhua") for a purchase price of $50,000,000.00. *Id.* ¶ 20. Simultaneously therewith, Plaintiffs would sell the Aircraft to Alti Management Ltd.[2] ("Alti") for a sale price of $57,000,000.00. *Id.* ¶ 21. Plaintiffs also alleged that they had an agreement to divide the profit between themselves: $3,000,000.00 would go to Freestream, and $4,000,000.00 would go to Brinley. *Id.* ¶ 22.

Plaintiffs further alleged that in or around June 2018, right around the time that Plaintiffs agreed to terms with Yunhua and Alti, the Dusek Defendants began communicating with those same entities and their corporate parents to try to arrange an alternative sale. *Id.* ¶ 23. In their communications with Yunhua and ICBC, the Dusek Defendants falsely represented, among other things, that they could arrange a sale to a different end purchaser (*i.e.* not Alti or any of its affiliates) and that their ability to purchase the Aircraft was in no way dependent on the receipt of funds from

---

[1] Yunhua is a subsidiary of ICBC Financial Leasing Co. Ltd. ("ICBC"), an arm of the Industrial and Commercial Bank of China. ECF No. 23 ¶¶ 9-10.
[2] Alti is a subsidiary of Liza Transport International ("LTI") and an affiliate of Groupe EBOMAF ("EBOMAF"), entities owned and controlled by an influential businessman from Burkina Faso, Mahamadou Bonkoungou.

2

an end purchaser. *Id.* ¶ 28. In their communications with Alti and LTI, the Dusek Defendants offered to pay certain Alti and LTI employees, including a particular aviation manager based in Burkina Faso, if those employees would divert the transaction away from Plaintiffs to the Dusek Defendants. *Id.* ¶ 27. The complaint also alleged that regardless of whether business competition was a partial motivator of the Dusek Defendants' actions, their conduct amounted to fraudulent, unlawful, and wrongful means as evidenced by their deliberate misrepresentations and their attempt to engage in flagrant commercial bribery. *See id.* ¶¶ 57-59, 78-81, 116-19, 133-36.

Ultimately, the Dusek Defendants' interference was successful. The Plaintiffs' SPAs with Yunhua and Alti were never fully performed. While Plaintiffs attempted to resurrect the transactions again in August 2018, after the Dusek Defendants' fraudulent misrepresentations had been exposed, the attempt was unsuccessful because the price of the Aircraft had been depressed to the point that the originally contemplated transaction structure was no longer economically viable. Consequently, Plaintiffs brought this First Action in September 2018 alleging that the Dusek Defendants' conduct directly and proximately caused millions of dollars in damages.

Discovery in this First Action has now closed. *See* ECF No. 46. Facts revealed through document discovery and Dusek's deposition demonstrated that the Dusek Defendants' primary transactional attorney, Cosby, and his law firm, Husch Blackwell (together, the "Attorney Defendants"), were central players in the scheme to interfere in Plaintiffs' transactions. The documents and testimony showed that, in fact, it was the *Attorney Defendants* who communicated the fraudulent misrepresentations to Yunhua and ICBC *in writing*—and it was the Attorney Defendants who drafted a fraudulent "commission agreement" designed to disguise and conceal the Dusek Defendants' bribe payments to a certain Alti and LTI employee.

3

## II. The Second Action

In light of the foregoing—and because efforts to find a negotiated resolution to these matters were unsuccessful—Plaintiffs commenced the Second Action on August 2, 2019. *See* Compl., *Brinley Holdings Inc. v. Husch Blackwell LLP*, No. 19-cv-___ (N.D. Ill. Aug. 2, 2019), ECF No. 1. The Second Action alleges all of the same facts alleged in the First Action, but adds allegations against the Attorney Defendants, including specific details of their conduct uncovered through discovery. Among other things, the complaint in the Second Action alleges that:

(i) the Attorney Defendants deliberately concealed from Yunhua and ICBC that the Dusek Defendants' end purchaser was in fact the same as Plaintiffs' (*id.* ¶¶ 63-68);

(ii) the Attorney Defendants intentionally misled Yunhua and ICBC about the nature of the Dusek Defendants' proposed transaction, including by making demonstrably false statements that the Dusek Defendants' transaction was "not contingent or in any manner dependent on [their] client re-selling the aircraft" (*id.* ¶¶ 69-84); and

(iii) the Attorney Defendants drafted and structured a sham "Commission Agreement" which constituted an offer to confer a benefit upon an employee of Alti and LTI, Moussa Diarra, with the intent to influence Diarra's conduct in relation to the affairs of his employer, and thus violated Illinois' commercial bribery statute, 720 ILCS 5/29A-1 (*id.* ¶¶ 85-102).

The Second Action asserts causes of action for: (1) intentional interference with the same contracts at issue in the First Action; (2) intentional interference with the same prospective economic advantages at issue in the First Action; (3) aiding and abetting the Dusek Defendants' conduct that is at issue in the First Action; and (4) unjust enrichment. (*See id.* ¶¶ 103-94).

## **ARGUMENT**

"Under Federal Rule of Civil Procedure 42(a)(2), a district court may consolidate actions if they 'involve a common question of law or fact.'" *Adams v. Szczerbinski*, 329 F. App'x 19, 22 (7th Cir. 2009). "The Seventh Circuit has emphasized that related cases pending within the same court should be consolidated before a single judge to avoid wasteful overlap." *Pochert v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, No. 11 C 2440, 2011 WL 4007731, at *2 (N.D. Ill. Sept. 9, 2011). Indeed, "[c]onsolidation not only conserves scarce judicial resources, but also reduces the resources ultimately expended by the litigants." *Abbott Labs. v. Teva Pharm. USA, Inc.*, No. 08 C 01243, 2008 WL 11399700, at *3 (N.D. Ill. Nov. 12, 2008).

In cases involving a common question of law or fact, "[t]he question of whether to grant consolidation is a matter of discretion for the trial court." *Sylverne v. Data Search N.Y., Inc.*, No. 08 C 0031, 2008 WL 4686163, at *1 (N.D. Ill. May 28, 2008). "In exercising that discretion, a court should consider whether the proposed consolidation would promote convenience and judicial economy, and whether it would cause prejudice to any party." *Id.* (internal citations omitted). In determining whether to consolidate actions, courts in the Northern District of Illinois also consider whether Local Rule 40.4, which governs motions for reassignment, has been satisfied. *See KPASA, LLC v. United States*, No. 04 C 109, 2004 WL 1144053, at *2 (N.D. Ill. May 17, 2004); *Ladenberger v. Nat'l Tech. Transfer, Inc.*, No. 99 C 5348, 2000 WL 1349247, at *2 (N.D. Ill. Sept. 19, 2000).

Here, the Court should grant the motion to consolidate. The Court has discretion to grant the motion because the First Action and Second Action involve common questions of law and fact. To involve a common question of law or fact, actions "do not have to be identical, nor must common issues predominate." *Abbott Labs.*, 2008 WL 11399700, at *3 (N.D. Ill. Nov. 12, 2008). Nevertheless, the First Action and Second Action involve numerous common issues of law *and*

5

fact such that common issues predominate. The Court should thus exercise its discretion to grant the motion.

Indeed, doing so would promote judicial economy without prejudicing any party and would be consistent with Local Rule 40.4. Granting the motion would promote judicial economy because the First and Second Actions involve the *same plaintiffs* asserting the *same legal theories* against related parties (the Dusek Defendants and their attorneys), concerning those parties' *joint* efforts to interfere with the *same contracts* concerning the *same property* over the *same period of time*. *See Pochert*, 2011 WL 4007731, at *3 ("Consolidation will promote judicial efficiency because common questions of law and fact predominate and the cases involve identical claims and substantially overlapping parties."); *see also Magnavox Co. v. APF Elecs., Inc.*, 496 F. Supp. 29, 32-33 (N.D. Ill. 1980) (granting motion to consolidate, where same plaintiff alleged that different defendants infringed same patent). Allowing these actions to proceed separately "would lead to a substantial waste of judicial time and resources" in the form of two largely duplicative proceedings. *Sylverne*, 2008 WL 4686163, at *2. For example, if the actions proceeded separately, the following issues (and more) would be decided twice: (1) whether the contracts relevant to both actions were sufficiently enforceable to form the basis of a claim for intentional interference with contractual relations; (2) whether Plaintiffs had a reasonable expectancy of entering into business relationships with Yunhua, ICBC, Alti, and/or Bolti; (3) whether those contracts or expectancies were breached; (4) whether Plaintiffs were harmed by those breaches; (5) whether those breaches were caused by the Dusek Defendants' and Attorney Defendants' concerted interference; (6)

whether such interference was unjustified; and (7) whether certain Alti and LTI employees were offered bribes to back out of the deal with Brinley.[3]

Likewise, granting the motion would not prejudice any party. The Dusek Defendants would not be prejudiced because this First Action was commenced less than one year ago and the court has not yet considered motions for summary judgment. *See Pactiv*, 2011 WL 686813, at *4 (no prejudice, even though earlier-filed action had been pending for more than a year). To the extent that consolidation would delay summary-judgment briefing in this First Action, such a delay would not be prejudicial, *cf. Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792-95 (7th Cir. 2004) (holding that district court abused its discretion in denying leave to amend, where district court erroneously concluded that eight-month delay was prejudicial), and would be outweighed by considerable gains in judicial economy that would stem from consolidation, *see Sage Prods., Inc. v. Devon Indus., Inc.*, 148 F.R.D. 213, 215 (N.D. Ill. 1993) (finding that "enhanced efficiency" outweighed "any possible inconvenience," where cases involved same plaintiffs and patents); *see also Dollens v. Zionts*, No. 01 C 5931, 2001 WL 1543524, at *2 (N.D. Ill. Dec. 4, 2001) (noting that "considerations of judicial economy strongly favor simultaneous resolution of all claims growing out of one event"). Nor would the Attorney Defendants be prejudiced. Indeed, the Attorney Defendants would likely benefit from consolidation because it would allow them to take part in these proceedings before the court rules on consequential issues that will affect their liability. *Cf. Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC*, 208 F.R.D. 59, 62 (S.D.N.Y. 2002) (explaining that "fact that discovery has progressed further" in earlier-filed action

---

[3] The fact that there are so many common issues creates a real risk of inconsistent results in the event that the actions are not consolidated. This is another basis for granting the motion. *See Pactiv Corp. v. Multisorb Techs., Inc.*, No. 10 C 461, 2011 WL 686813, at *1 (N.D. Ill. Feb. 15, 2011) ("Additionally, consolidation may be ordered where there is a risk of inconsistent rulings."); *see also Pochert*, 2011 WL 4007731, at *3 (consolidating actions to avoid "[t]he possibility of inconsistent results").

may "favor" consolidation because "much of the discovery in the [earlier-filed] action should be applicable to the [later-filed] action").

Additionally, granting the motion is consistent with Local Rule 40.4, which governs the reassignment of related cases. Under that rule, a case may be reassigned if it (1) is "related" to an earlier-filed case, (2) the earlier- and later-filed cases are pending in the Northern District of Illinois, (3) "the handling of both cases by the same judge is likely to result in substantial saving of judicial time and effort," (4) "the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially," and (5) "the cases are susceptible of disposition in a single proceeding." L.R. 40.4(b). Cases are "related" if they "involve the same property" or "some of the same issues of fact or law" or "grow out of the same transaction or occurrence." L.R. 40.4(a).

Here, the cases are "related" because, as explained above, they involve many of the same issues of fact and law and arise out of the same transaction or occurrence—interference with agreed-upon transactions relating to the Aircraft. *See DBD Franchising, Inc. v. DeLaurentis*, No. 09 C 669, 2009 WL 1766751, at *5 (N.D. Ill. June 23, 2009) (cases arising out of same contract "related"). Additionally, both cases are pending in the Northern District of Illinois and, as explained above, consolidation would save judicial time and effort by preventing duplicative resolution of the same issues. *See id.* (judicial resources would be saved by reassignment, where both cases would "require a court to consider the meaning of and the facts surrounding" a contract). And, as explained above, consolidation would not substantially delay the First Action. *See id.* (requirement satisfied, where both cases were in early stages and "little judicial effort" had been expended in either case). Finally, the cases are susceptible to disposition in a single proceeding because, as explained above, the actions "originate from the same core of facts." *See Teacher's*

*Ret. Sys. of La. v. Black*, No. 04 C 834, 2004 WL 1244236, at *2 (N.D. Ill. June 3, 2004); *Helferich Patent Licensing, LLC v. N.Y. Times Co.*, No. 1:10-cv-04387, 2012 WL 1368193, at *3 (N.D. Ill. Apr. 19, 2012) (requirement satisfied where "cases allegedly share similar facts and three of the same patents").

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' motion to consolidate this First Action with the Second Action.

Dated: August 2, 2019                                          Respectfully submitted,

By:  /s/        John Ellis

John Ellis
**ELLIS LEGAL P.C.**
200 West Madison Street, Suite 2670
Chicago, Illinois 60606
(312) 767-3256

*Attorney for Plaintiffs*